## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HUMES McCOY AVIATION, INC. )
)
           Plaintiff, )   Case: 1:20-cv-02259 JURY DEMAND
)   Assigned To : Howell, Beryl A.
vs. )   Assign. Date : 8/13/2020
)   Description: Employ. Discrim. (H-DECK)
BERNIE 2020, INC. and )
ARI RABIN-HAVT )
)   **DEMAND FOR JURY TRIAL**
)
           Defendants. )
)

## COMPLAINT

The Plaintiff, Humes McCoy Aviation, Inc. ("Humes McCoy"), *pro se*, hereby files this Complaint against Defendants Bernie 2020, Inc. ("Bernie 2020") and Ari Rabin- Havt ("Rabin-Havt")(collectively "Defendants") and alleges:

## INTRODUCTION

1.    This action is based on the racially discriminatory acts of the Defendants in contracting, refusals to contract, and/or contracting on unequal and discriminatory terms. This action is brought to redress civil rights violations under 42 U.S.C. § 1981 which guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." The Plaintiff seeks an award of monetary and punitive damages, equitable relief, and injunctive relief.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1981 and federal question jurisdiction therefore exists under 28 U.S.C. §§ 1331 and 1343. This Court

also has subject matter jurisdiction over this matter because no Plaintiff is a citizen of the same state as any Defendant and the amount at issue exceeds $75,000. 28 U.S.C. § 1332.

3. This Court has personal jurisdiction over the Defendants because Defendant Bernie 2020 does business in this jurisdiction and because Defendant Rabin-Havt is a resident of this judicial district.

4. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2) because Defendant Rabin-Havt is a resident of this District, because Defendant Bernie 2020 is registered to do business in this judicial district as a foreign non-profit corporation, and because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

5. Plaintiff Humes McCoy is a Florida corporation with its principal place of business located in Miami, Florida.

6. Defendant Bernie 2020 is a Vermont non-profit corporation, with its principal place of business in Burlington, VT. Defendant Bernie 2020 is registered to do business and maintains an office in this judicial district. United States Senator, Bernie Sanders, is a Director of Bernie 2020.

7. Defendant Rabin-Havt is a resident of Washington, D.C. At all times relevant hereto, Rabin-Havt was Personal Advisor and Deputy Campaign Manager for Bernie 2020, Inc. Defendant Rabin-Havt was also employed by Senator Sanders as his Deputy Chief of Staff.

## **FACTUAL BACKGROUND**

8.  Plaintiff Humes McCoy is a minority-owned aviation corporation involved in the business of providing private chartered flight services to companies, sports teams, politicians, government agencies and business executives, via jets and helicopters, at competitive prices.

9.  Plaintiff Humes McCoy is, upon information and belief, the only African-American owned aviation company in the United States.

10. Plaintiff Humes McCoy is also a certified Minority Business Enterprise. At all times relevant hereto, Plaintiff Humes McCoy has been wholly owned by an African-American.

11. In 2015, Frank E. Watkins ("Watkins"), a speechwriter for Rev. Jesse L. Jackson, Sr. and former senior executive of the National Rainbow Coalition, introduced Plaintiff's President, Thay James ("TJ") Humes ("Humes") to Defendant Rabin-Havt and other senior personnel for Senator Sanders' 2016 presidential campaign. Mr. Watkins, who has close ties to Democratic leaders and Capitol Hill staff, has worked on at least three (3) Democratic presidential campaigns. Watkins introduced Humes to Defendant Rabin-Havt as the owner of the only minority-owned aircraft company in the United States.

12. During 2016, Plaintiff Humes McCoy submitted multiple proposals to Defendant Rabin-Havt in connection with aviation services for Senator Sanders' 2016 presidential campaign.

13. Despite Plaintiff Humes McCoy's ability to provide private jet and helicopter services at competitive prices, Bernie Sanders' 2016 campaign did not contract with it.

14. On numerous occasions, Plaintiff Humes McCoy attempted to enter into contractual relations with Defendant Bernie 2020 for private jet and helicopter services during the campaign for the 2020 Democratic Party nomination for President of the United States.

15. At all times relevant hereto, Defendants interacted with Plaintiff Humes McCoy a minority-owned business, in a discriminatory manner.

16. Defendant Bernie 2020's interactions with African-American-owned businesses and other persons of color have been infrequent and has constituted little more than "window dressing" in an effort to secure minority votes.

17. Defendants, at the same time, engaged in a pattern and practice of refusing to do business in any significant way with and failed to offer equal, non-discriminatory contracting terms and conditions to Plaintiff Humes McCoy.

18. At all times relevant hereto, Defendants misled and deceived Plaintiff Humes McCoy into believing the parties were dealing in good faith. Instead, Defendants entered into sham contract negotiations with Plaintiff Humes McCoy while, at the same time, entered into contractual relations with Apollo Jets, LLC ("Apollo"), a non-minority-owned company owned by a convicted felon, for aviation services.

19. On or about March 25, 2017, Defendant Rabin-Havt, while in Senator Sanders' office in the Dirksen Senate Office Building, contacted Humes and advised him that Senator Sanders needed private air transportation for himself and seven (7) others between Portland, ME and Phoenix, AZ with stops in Charleston, WV, Louisville, Miami, Dallas, Billings, MT, and Omaha, and Phoenix. The proposed cost of the aviation services to be provided by Plaintiff Humes McCoy to Senator Sanders was $128,000.

20. Although Plaintiff Humes McCoy met all of the requested specifications and proposed a competitive price, it received no response from Defendants.

21. Upon information and relief, Defendant Rabin-Havt forwarded Plaintiff Humes McCoy's work product to Apollo.

22. Upon information and belief, Apollo performed the aviation services requested by Defendant Rabin-Havt's for Senator Sanders and was paid more than $300,000 for the same services that Plaintiff Humes McCoy would have performed for $128,000.

23. On February 20, 2019, after Senator Sanders announced his candidacy for the 2020 Democratic nomination for President, Plaintiff Humes McCoy sent Defendant Rabin-Havt an e-mail reminding him that it was interested in providing aviation services for the campaign.

24. On February 24, 2019, Defendant Rabin-Havt advised Humes, via e-mail, that Defendant Bernie 2020 needed private air transportation for Senator Sanders, his staff, and thirty (30) press corps members between the New York City area and Selma, AL and then onto Chicago's Midway airport. Defendant Rabin-Havt requested a G-4 or equivalent 12-passenger private jet and one 30-passenger commercial regional jet.

25. On February 25, 2019, Plaintiff Humes McCoy submitted a proposal to Defendant Rabin-Havt for the requested services. The proposed cost of the requested services was $162,553.

26. In response to Humes McCoy's proposal, Defendant Rabin-Havt directed Humes McCoy to secure one 12-passenger Gulfstream private jet and one 30-passenger commercial regional jet.

27. Plaintiff Humes McCoy, in reliance upon Defendant Rabin-Havt's instructions, secured the requested aircraft, and filed the requested flight plans.

28. Upon information and belief, Defendant Rabin-Havt forwarded Humes McCoy's proposal to Apollo, which performed the requested aviation services for Defendant Bernie 2020.

29. Approximately four (4) months later, on or about June 14, 2019, Defendant Rabin-Havt contacted Humes via e-mail and advised that Defendant Bernie 2020 needed private air transportation for Senator Sanders and several staff members between Des Moines, IA and Houston.

30. In response to Defendant Rabin-Havt's request, on June 15, 2019, Plaintiff Humes McCoy submitted a written proposal to him. Although Plaintiff Humes McCoy met all requested specifications, no response was ever received.

31. Upon information and belief, Defendant Rabin-Havt again forwarded Plaintiff Humes McCoy's work product to Apollo and awarded the contract for the Des Moines – Houston flight to that non-minority-owned company.

32. On June 14, 2019, Defendant Rabin-Havt sent an e-mail to Humes, stating: "We have not used a charter yet for the campaign but it looks like we might need one the evening of July 4 to go from Des Moines (Or possibly an alternative FBO in Iowa) to Houston. We would need a mid sized jet. (Like a Hawker 800/900) Can I get an approximate price from you for that flight?"

33. On June 15, 2019, Plaintiff Humes McCoy responded via e-mail, proposing a $26,000 fee for the routings requested by Defendant Rabin-Havt.

34. Although Plaintiff Humes McCoy met all of Defendant's specifications, no response was ever received.

35. Upon information and belief, Defendant Rabin-Havt forwarded Plaintiff Humes McCoy's work product to Apollo which performed the requested services for Defendant Bernie 2020.

36. On or about July 22, 2019, Defendant Rabin-Havt contacted Humes by email and stated: "Hi TJ, [w]e have reached a point where we are considering using charters on a more regular basis. Therefore we want to explore a long-term contract. Even though this might not come until fall, wanted to start figuring this out. So basically, at difference stages we will need different sized jets. 1. a mid size 8-seater 2. a heavy jet G4/5 14-16 seats 3. Jumbo 737 airframe set up commercially with 80-100 seats. I need to know under a long-term plan what the cost will be to operated these planes if we had an agreement through March 5. (What would the per hour costs?

Or other fee structures.) Also how can you handle billing. When we travel with Media they pay a per seat fee for each flight they are on. Can you bill them directly and deduct from our bill? Thanks, Ari."

37.     The same day, Plaintiff Humes McCoy, via e-mail, sent Defendant Bernie 2020 a proposal for a long-term aviation services contract. Plaintiff Humes McCoy lined up a Gulfstream and a Challenger aircraft in anticipation of entering into a long-term contract with Defendant Bernie 2020 for aviation services.

38.     On or about July 24, 2019, Defendant Rabin-Havt replied, stating: "Thanks TJ. [w]ill be in touch."

39.     Although Plaintiff Humes McCoy again met all of the Defendants' requirements to enter into a long-term contract, no response was received.

40.     Upon information and belief, during August and September 2019, Defendant Bernie 2020 used Apollo exclusively for aviation services.

41.     On October 1, 2019, Senator Sanders suffered a heart attack in Las Vegas.

42.     On October 4, 2019, after learning about Senator Sanders' serious medical condition, Humes sent an e-mail to Defendant Rabin-Havt, stating: "Greetings Ari, No doubt, all of us have kept and will continue to keep the Senator in our daily prayers. There is talk of him feeling better, so we do know that Prayer works. It would be an honor to fly to Las Vegas, pick everyone up and fly to your next destination. I will keep the aircraft with you permanently from then on. That means we are ready for you always available on demand and on a moment's notice to fly, no matter how long the period of days between flights at no additional cost. Your thoughts go or no go will mean the world to me!"

43. In response, on October 4, 2019, Defendant Rabin-Havt called Humes and thanked him for flight planning and securing the requested aircraft. Defendant Rabin-Havt assured Humes that once Senator Sanders started flying again, that he would give Humes McCoy the contract for long-term aircraft services.

44. On or about December 10, 2019, Defendant Rabin-Havt put Humes in contact with assistant, Nathan Ober ("Ober"), and another Bernie 2020 campaign staffer, Jean-Michel Picher ("Picher").

45. On December 10, 2019, Ober advised Humes that he worked with Defendant Rabin-Havt and Picher for Bernie 2020, was now handling scheduling and aircraft logistics, and that he wanted to connect with him about what options Plaintiff Humes McCoy could offer to the campaign for upcoming travel. Ober proposed that he and Humes connect by phone the next day, which Humes agreed to do.

46. On or about December 11, 2019, Ober spoke with Humes via telephone and asked him to forward the proposal that Plaintiff Humes McCoy previously forwarded to Defendant Rabin-Havt. Plaintiff Humes McCoy promptly complied with Ober's request.

47. On or about December 18, 2019, Ober contacted Humes by e-mail stating: "Hi TJ, Apologies for my delayed response. Below is the information for two quotes we would like to request for travel at the end of this month. Please let us know if you have any questions. Thank you. We would like two quotes. Both quotes are for the itinerary listed below. The first quote is for this itinerary on a 8 seat super midsized The second quote is for this itinerary on a 12-13 seat heavy jet. One criteria is that all legs must be made without a refuel stop. Sunday December 29 Manchester, NH to Des Moines, IA (MHT-DSM) afternoon departure Monday December 30 NO FLIGHT Tuesday December 31 NO FLIGHT Wednesday January 1 NO

FLIGHT Thursday January 2 NO FLIGHT Friday January 3 NO FLIGHT Saturday January 4 NO FLIGHT Sunday January 5 Des Moines, IA to Dulles, VA (DSM-IAD) evening departure."

48. On December 19, 2019, in response to Ober's request for a quote, Plaintiff Humes McCoy prepared flight plans and provided a proposal for aircraft services for Defendant Bernie 2020 as requested.

49. Later the same day, Ober contacted Humes via e-mail and asked him to amend his quote with regard to Plaintiff Humes McCoy's December 10th proposal, stating: "Could I ask for revised quotes for these two planes for just the first leg: MHT-DSM on Sun Dec 29 in the afternoon? Thank you!"

50. On December 20, 2019, Ober sent an e-mail to Humes, stating: "TJ - we would also be willing to consider a quote for a midsize 8-seater plane that can make the flight from MHT-DSM without refueling. We would need to know the amount of space for luggage as well as the tail number of the aircraft. Thank you."

51. On December 20, 2019, Plaintiff Humes McCoy submitted an amended proposal as requested by Ober and, in reliance upon Ober's representations, secured the requested aircraft and prepared the flight plans.

52. On December 21, 2019, Ober requested a revised quote for the Manchester – Des Moines leg.

53. The same day, Humes responded with a proposal in response to Ober's revised request for a quote.

54. On December 22, 2019, Ober responded by email as follows: "Thank you for this TJ. We will definitely circle back with you when we reach the point of considering long-term deals. Many thanks and Happy Holidays to you and yours!"

55.     On or about February 5, 2020, Ober sent an e-mail to Humes, stating: "TJ - can you give us quotes for the two Gulfstream and the 737 for month-to-month leases starting on February 13 out of Burlington, VT (BTV)? Let me know if you have any other questions for the quotes. Thank you."

56.     On February 5, 2020, Humes replied to Ober by submitting a pricing structure for the requested services, prepared a flight plan, and secured the requested aircraft.

57.     On or about February 7, 2020, Ober replied, stating "Thanks for this TJ. Wondering if you can provide a more detailed breakdown of your pricing structure. Specifically, how would you bill for landing fees, parking fees, overnight fees, after-hours fees, crew per diems, crew hotels, flight attendant costs, and any other fees such as deicing, hangar, etc? Also, why would the 737 not be able to stay with the Senator like the GIVSP or 550 would? And in the event that there is a mechanical issue with the plane, what would you be able to provide as a backup replacement option? Thank you for answering our questions."

58.     The same day, Humes responded via e-mail, providing answers to all of Ober's questions, including a more detailed breakdown of Plaintiff Humes McCoy's pricing structure.

59.     On or about February 8, 2020, Ober replied by e-mail, stating: "Thanks for this TJ - we have some follow up questions about the 737: -can you please provide more details about the cabin interior? Number of seats, type of seats, cabin dimensions, a cabin diagram and pictures. -if we would need to do a crew swap, can you accommodate that? How much notice do you need? And how much would it cost? -would you provide flight attendants on the 737? If yes, how many? Would this cost be included in the hourly rate? Thank you."

60.     The same day, Humes responded, providing the requested specifics.

61. Later that day, Ober replied, stating: "Can you please provide proof of your Part 135 certificate? -how much advance notice would you need to arrange a crew swap? -we need a more detailed break-down of the payment structure - what expenses are covered in the hourly rate, which are not, what minimum amount of days/flight hours does the deposit count towards, how do we renew, etc. The lease as it stands is missing a lot of these details which we would need to have in writing before we could move forward."

62. Shortly thereafter, Humes replied to Ober and provided all the requested items, including a written aircraft lease agreement.

63. Although Humes McCoy complied with all of Defendant Bernie 2020's requests, on February 9, 2020, Ober pulled the plug on the sham negotiations in an e-mail to Humes stating: "Thanks for this TJ. Upon review of [your] proposal, we are going to pursue other options."

64. The aviation services proposed by Plaintiff Humes McCoy to Defendant Bernie 2020 included the following high-quality services: traveling comfort; streamlined transportation solutions designed to eliminate commercial-related delays or cancellations; pilots and staff with years of experience flying dignitaries and professionals around the country; the use of top-tier aircraft equipped with satellite phones, meals upon request, 120-volt power outlets, television, and wifi.

65. Upon information and belief, all aviation services proposed by Plaintiff Humes McCoy were at least equal to or better than provided by Apollo and other non-minority aviation companies.

66. According to FEC records, Defendant Bernie 2020 paid Apollo approximately $1.6 million dollars for aviation services between January 2019 and March 2020.

67. Between January 2019 and March 2020, Defendant Bernie 2020 paid Apollo more for aviation services than proposed by Plaintiff Humes McCoy for identical services.

68.    The cost of all aviation services proposed by Plaintiff Humes McCoy were at least equal to or better than the same services provided by Apollo and other non-minority entities.

69.    At all times relevant hereto, Plaintiff Humes McCoy met all of Defendants' terms and conditions for aviation services.

70.    At all times relevant hereto, Plaintiff Humes McCoy was qualified and ready to offer the aviation services by Defendants.

71.    At all times relevant hereto, Plaintiff Humes McCoy's proposals for aviation services were less expensive than proposed by Apollo and other non-minority entities.

## COUNT I
## (RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981)

72.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 71 as if fully set forth herein.

73.    Humes is an African-American man and a member of a protected class.

74.    Plaintiff Humes McCoy, by virtue of Humes' race, has standing to maintain an action under 42 U.S.C. § 1981.

75.    Each Defendant has individually and/or collectively engaged in pernicious and intentional racial discrimination in contracting on account of race, in violation of 42 U.S.C. § 1981

76.    Defendants illegally discriminated against Plaintiff Humes McCoy on account of race and in violation of 42 U.S.C. § 1981 by failing to contract with it for aircraft services.

77.    Defendants engaged in a pattern and practice of discriminatory conduct, including by entering into sham negotiations with Plaintiff Humes McCoy for aviation services despite having no intention to enter into contractual relationships with it.

78. Each Defendant discriminated against Plaintiff Humes McCoy by subjecting it to different contracting terms and conditions than it did when contracting with non-minority-owned businesses.

79. Each Defendant discriminated against Plaintiff Humes McCoy by creating a binary system: a discriminatory one used when interacting with Plaintiff Humes McCoy, a minority-owned business, and another one used when interacting with Apollo, a non-minority-owned business.

80. Defendants' race-based system of engaging in contractual negotiations violated 42 U.S.C. § 1981 and resulted in Plaintiff Humes McCoy being denied of equal treatment under law.

81. Defendants' race-based system made it impossible for Plaintiff Humes McCoy to have succeeded in contract negotiations with Defendants.

82. Defendants failed to treat Plaintiff Humes McCoy, a minority-owned company, in the same manner than they treated non-minority-owned companies.

83. Upon information and belief, Defendants subjected Plaintiff Humes McCoy to terms and conditions that it did not require from non-minority-owned companies, including:

   (a) Requiring Plaintiff Humes McCoy to submit formal bids for services; no such requirement was imposed on Apollo;

   (b) Requiring Humes to submit to security/background checks, while either not requiring similar background or clearance checks from Apollo or ignoring the results of those checks given its owner's status as a convicted felon who served two (2) years in prison;

   (c) Requiring Plaintiff Humes McCoy's President to address any unpaid parking tickets, a minor oversight that Defendants deemed to be a prerequisite;

   (d) Plaintiff Humes McCoy was required to submit written flight plan intentions in order to be considered; no such requirement was imposed on Apollo; and

(e) Plaintiff was required to secure aircraft and to submit proof of licensing in order to be considered; no such requirement was imposed on Apollo.

84. Upon information and belief, Defendants required Plaintiff Humes McCoy to compete for aviation services despite having previously decided to use Apollo, thereby rendering purported contract negotiations a sham.

85. Defendants' discriminatory contracting practices were designed to create the impression that Defendant Bernie 2020 was negotiating with minority firms, despite lacking any intent to contract with those firms.

86. Defendants' actions were the result of intentional racial animus and deprived Plaintiff Humes McCoy of the same contracting opportunities provided to similarly situated, non-minority-owned aviation companies.

87. Defendants refused to contract with Plaintiff Humes McCoy on account of race by falsely claiming to Jessie Jackson and others that its proposals were not competitive.

88. Defendants conspired and devised a strategy to deprive Plaintiff Humes McCoy of the opportunity to contract with Defendant Bernie 2020 for aviation services on equal terms provided to non-minority-owned aviation companies.

89. Defendants refused and/or failed to enter into contracts with Plaintiff Humes McCoy on account of race, in violation of 42 U.S.C. § 1981.

90. Although Plaintiff Humes McCoy offered equal to and/or better aircraft and prices than Apollo, Defendants refused and/or failed to enter into good faith contract negotiations with Plaintiff Humes McCoy on account of race, in violation of 42 U.S.C. § 1981.

91. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Humes McCoy sustained financial and other damages.

92. Defendants' actions were intentional, deliberate, willful, malicious, and conducted with reckless disregard of Plaintiff Humes McCoy's civil rights.

93. Senator Sanders has frequently alluded to building a "multi-racial" movement that appeals to a broad coalition that is inclusive as a presidential candidate and as a United States Senator.

94. Defendant Bernie 2020 campaign's commitment provides: "This campaign is committed to advancing diversity, equity, and inclusion in hiring, in programming, and in all other aspects of the work we do. Diversity, equity, and inclusion are deeply connected to our mission, our success, and to serving the American people. Some organizational priorities include:

   (a) Building policies, procedures and services that uplift and protect everyone and do not lead to inequalities;

   (b) Creating teams and relationships among staff, volunteers, and supporters that are reflective of the populations we serve;

   (c) Increasing engagement of communities of color, women, those with disabilities, and all people historically shut out of electoral and caucus processes;

   (d) Prioritizing the inclusion of diverse communities in internal leadership;

   (e) Fostering a culture of open-mindedness, compassion, and inclusiveness;

   (f) Creating and maintaining opportunities for engagement, education, and discourse related to issues of equity, diversity, and inclusion; and

   (g) Changing the historical culture of inequity and exclusion pervasive in political campaigns."

95. Defendant Bernie 2020 repeatedly, knowingly, and illegally declined to contract with Plaintiff Humes McCoy.

96. At all times relevant hereto, Defendants discriminated against Plaintiff Humes McCoy based on race by misleading it into believing the parties' contract negotiations for private aviation services were legitimate, serious, and done in good faith.

97. Plaintiff Humes McCoy's economic damages associated with Defendants' discriminatory conduct exceed $1.6 million.

98. Although its campaign commitments are inclusive and expressly contain nondiscriminatory policies, Defendant Bernie 2020 engaged in racially discriminatory contracting practices.

99. Senator Sanders has acknowledged the mistreatment of minorities who have worked on his campaigns and political associations. For example, during 2019, one of Senator Sanders' political action committees was a defendant in a now-settled race discrimination lawsuit brought in this Court by an African-American employee. The circumstances surrounding this litigation are indicative of a pattern and/or practice of racial discrimination by Defendants.

**WHEREFORE**, the Plaintiff requests that this Court:

A. Enter judgment in its favor against Defendant Bernie 2020 and Defendant Rabin-Havt, jointly and severally;

B. Declare that each Defendant illegally discriminated against Plaintiff Humes McCoy based on race in violation of 42 U.S.C. § 1981;

C. Award Plaintiff Humes McCoy compensatory damages from Defendants in an amount to be determined at trial and in excess of $1.6 million;

D. Award Plaintiff Humes McCoy punitive damages;

E. Award Plaintiff Humes McCoy reasonable attorneys' fees and costs; and

F. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all claims and issues so triable.

Dated this 12 day of August 2020.

*[signature: Thay P. Humes]*

Thay J. Humes
Chief Operating Officer
Humes McCoy Aviation
3841 SW 147th Ave. Suite 102
Miami, Florida. 33185
(404) 840-3660
hma2001.hma@gmail.com